UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-10279-GAO

ANTHONY CLEMENTE,
Petitioners,

v.

STEVEN O'BRIEN,
Respondent.


CIVIL ACTION NO. 10-10282-GAO

DAMIAN CLEMENTE,
Petitioner,

v.

LUIS SPENCER
Respondent.


ORDER
March 31, 2015

O'TOOLE, D.J.

In 1997, the petitioners, father and son, were convicted of first degree murder and related charges in Massachusetts state court and sentenced to life imprisonment. Defendants moved twice for new trials, citing Sixth and Fourteenth Amendment violations, which motions were denied. The Supreme Judicial Court ("SJC") ultimately affirmed both the convictions and the denials of the motions for new trial. In 2010, each petitioner filed a timely petition for habeas relief; the two cases were subsequently consolidated.

# I. Background

The facts are set out in detail in the opinion of the SJC. Commonwealth v. Clemente, 893 N.E.2d 19 (Mass. 2008). Pursuant to 28 U.S.C. § 2254(e)(1), the SJC's factual findings are entitled to a presumption of correctness. See Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001). The petitioners bear the burden of rebutting this presumption by clear and convincing evidence. Id.; see also Coombs v. Maine, 202 F.3d 14, 18 (1st Cir. 2008).

## A. The Shooting

The petition arises out of a shooting that took place at the 99 Restaurant in Charlestown, Massachusetts on November 6, 1995. For over a year, Damian Clemente had experienced problems with members of the Luisi and Sarro families in the North End section of Boston. The Luisi family was following, harassing and threatening Damian because he was selling drugs in the North End and not paying money to the Luisis. On November 5, 1995, Damian and Vincent Perez got into a fight with Robert Luisi's nephew, Joseph Ferlito. Over time, Anthony, Damian's father, became convinced that the Luisi family was going to kill his son.

On November 6, 1995, Damian and Perez were at the 99 Restaurant in Charlestown, where they saw Robert Luisi, Roman Luisi, Anthony Sarro, Richard Sarro, and Sonny Pelosi together in a booth. When Damian telephoned, Anthony instructed Damian not to move and went to the restaurant with his nine millimeter handgun. He did this to "get the boys out alive." Clemente, 893 N.E.2d at 28. According to the SJC's summary:

> As he approached the restaurant at approximately 1:25 P.M., Anthony looked inside and saw the Luisis and Sarros sitting at a booth and noted that nothing had happened. Anthony entered the restaurant, went to the Luisi–Sarro group, and asked Robert Luisi, "What's going on?" Robert Luisi replied, "It's your fucking kid." Anthony asked, "Why is it always my fucking kid? This kid is nothing to you." Roman Luisi jumped from the booth, and the look in his eyes changed. Anthony stuck out his left hand and backed up somewhat, saying to Roman Luisi, "It [doesn't] have to be this way." Anthony saw Damian and Perez walking toward the Luisi table and saw Roman Luisi put both his

2

hands down toward the fanny pack he was wearing in front. Roman Luisi said something about no one getting out of there alive. Anthony shoved his son and Perez behind him and shot Roman Luisi. Sonny Pelosi yelled and Robert Luisi stood up. Anthony shot Sonny Pelosi. Robert Luisi reached for Anthony, who shot him in the head. Anthony heard the sound of shots, and believed he was being shot, but was not certain of the source. He saw Roman Luisi lying on the ground and shot him twice more, once in the back and once in the head. Anthony then saw Anthony Sarro moving and shot him again. Anthony went "to drop the hammer on [Richard Sarro]," but his gun was now empty.

Id. at 28-29. Off-duty Everett police officers were present in the restaurant that day and chased Damian and Perez outside the restaurant and arrested them. Damian was found with a loaded .45 caliber pistol. A bullet fired from this gun was found in the body of Robert Luisi.

After leaving the restaurant, Anthony threw away his gun, jacket, and sneakers. The next day, he was interviewed by Boston Police Sergeant Detective Daniel Keeler at the Charlestown District Court where Damian was being arraigned. When questioned, Anthony explained that he had acted in self-defense. He was arrested, received and waived his Miranda rights, and was interviewed again that same day. He told police that his family had lived in fear of the Luisis for years and he had recently heard that Robert Luisi was going to hurt his son.

B. The Trial

The defendants were charged with four counts of murder in the first degree, armed assault with intent to murder Sarro, who was the only surviving victim, assault and battery by means of a dangerous weapon, unlawful possession of a dangerous weapon, and unlawful possession of ammunition.

The principal issues at trial were whether the defendants acted in self-defense and whether Anthony acted in defense of another. The defendants presented evidence of specific acts of violence by the victims, as well as evidence regarding the victims' reputations for violence.

A Suffolk County jury found Anthony guilty of all charges. Damian was found guilty of one count of first degree murder with deliberate premeditation, guilty of two counts of second degree murder, and not guilty on one count of first degree murder. Both men were given life sentences. The defendants filed a joint motion for a new trial with a request for an evidentiary hearing on June 5, 2003, which was denied. They filed a second motion for a new trial on May 18, 2006, which was also denied. The SJC affirmed the convictions and the denial of the two motions for new trial on September 5, 2008.

## II.     Standard of Review

Under the standard established by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition will not be granted "with respect to any claim that was adjudicated on the merits in state court proceedings" unless the State court decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Habeas relief is not warranted if the state court's decision was merely erroneous or incorrect; it must be "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 27 (2002). In ground eleven of his petition, Anthony asserts that this standard of review is an unconstitutional restriction on my Article III authority. I do not treat it as such. See Evans v. Thompson, 518 F.3d 1, 11 (1st Cir. 2008) ("while AEDPA does restrict a remedy, it does not interfere with Article III powers").

## III.    Procedural Default

Federal habeas review is unavailable in those situations where the "state court has reached its decision on the basis of an adequate and independent state-law ground." Burks v.

Dubois, 55 F.3d 712, 716 (1st Cir. 1995). A state law ground may be adequate and independent where the "state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Simpson v. Matesanz, 175 F.3d 200, 207 (1st Cir. 1999). A state procedural rule is found to be adequate if it is consistently applied by the state courts, Horton v. Allen, 370 F.3d 75, 80 (1st Cir. 2004), and independent if it does not depend on and is not interwoven with federal law, Coleman, 501 U.S. at 735. Additionally, procedurally defaulted claims are not entitled to federal habeas review unless the petitioner is able to demonstrate cause for the default and actual prejudice or demonstrate that failure to consider the defaulted claim will result in "a fundamental miscarriage of justice." Id. at 750.

The respondent argues that some of the petitioners' claims are procedurally defaulted, specifically that the judge committed error in giving a jury instruction on excessive force in defense of another,[1] that it was error to allow the prosecutor to ask Anthony, over objection, to comment on the credibility of other witnesses,[2] that is was error to conduct the voir dire of jurors regarding the newspaper article without the petitioners present,[3] and finally, in response to a jury inquiry, that the judge committed error by omitting the word "not" in an instruction on joint venture.[4] The SJC found these claims waived for failure to object at trial or failure to raise on appeal, but reviewed them under the Massachusetts substantial likelihood of miscarriage of justice standard. See Mass. Gen. Laws ch. 278 § 33E; Clemente, 893 N.E.2d at 43, 52. This rule

---

[1] Anthony's ground two, Damian's ground three. For Damian's petition, see No. 10-cv-10282-GAO (dkt. no. 1).
[2] Anthony's ground twelve.
[3] Anthony's ground ten, Damian's ground eleven.
[4] Anthony's ground nine, Damian's ground ten. Damian also objects in ground two to the instruction on the intent element of joint venture. That issue is addressed in the following section.

5

constitutes a "classic example of an independent and adequate state ground" for the purposes of finding procedural default. Simpson v. Matesanz, 175 F.3d 200, 207 (1st Cir. 1999).

The petitioners cannot establish cause or prejudice. To the extent they seek to do so with the presentation of documents obtained pursuant to the Freedom of Information Act, I reject that argument for the same reasons stated in the prior order denying the petitioners' motion to stay.[5] (Mar. 27, 2013 Order (dkt. no. 49).) Since the petitioners have not met their burden of showing any basis to justify federal habeas review of these procedurally defaulted claims, I decline to review them at this time.

**IV.** **Discussion**

A. State Law Claims

The respondent argues that five of the petitioners' claims are not entitled to habeas review because they involve matters of state law. Federal habeas is not an "ordinary error-correcting writ." Nadworny v. Fair, 872 F.2d 1093, 1096 (1st Cir. 1989). Rather, it "exists to rescue those in custody from the failure to apply federal rights, correctly or at all." Id. Relief is available only if there has been a violation of the laws or treaties of the United States as "it is not the province of a federal habeas court to reexamine state court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Kater v. Maloney, 459 F.3d 56, 61 (1st Cir. 2006) (relief is available only where the application of state law rises to the level of a due process violation).

---

[5] Additionally, these documents cannot support the merits of the habeas claims because they were not part of the state court record. Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).

*i.     Evidentiary Issues*

Four of the petitioners' claims assert denial of due process as a result of evidentiary rulings made by the state courts: first, that their right to present a defense was infringed when the SJC did not apply the rule established in Commonwealth v. Adjutant, 824 N.E.2d 1 (Mass. 2005);[6] second, that Anthony's right to present a defense was infringed when he was not allowed to introduce evidence about incidents when the victims were the first aggressors;[7] third, that their rights were violated when they were not allowed to introduce Ferlito's grand jury testimony into evidence;[8] and finally, that Anthony's rights were violated when the court did not allow him to review the transcript of the hearing where Sarro asserted his Fifth Amendment right against self-incrimination.[9]

The Sixth Amendment right to present a defense "does not abrogate the trial judge's role as gatekeeper at trial." Neverson v. Bissonnette, 242 F. Supp. 2d 78, 86 (D. Mass. 2003). Massachusetts law requires a trial to judge to make determinations as to the relevance, prejudice, and probative value of various types of evidence. See, e.g., Commonwealth v. Booker, 436 N.E.2d 160, 163 (Mass. 1982). Habeas relief is generally "unavailable to persons solely on the basis of alleged errors in evidentiary rulings." Salemme v. Ristaino, 587 F.2d 81, 85 (1st Cir. 1978). "The Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules." Marshall v. Lonberger, 459 U.S. 422, 438 n.6 (1983).

---

[6] Anthony's ground six, Damian's ground seven.
[7] Anthony's ground fourteen.
[8] Anthony's ground three, Damian's ground four.
[9] Anthony's ground fifteen.

The petitioners frame the Adjutant issue as a Sixth Amendment violation, but it is actually an issue of state evidentiary law. Adjutant represented a change in prior Massachusetts law by holding that the trial judge has the discretion to admit evidence of specific acts of violence by the victim, even if those acts were unknown to the defendant. Because the petitioners' appeal was pending when Adjutant was announced, they assert that the SJC erred in refusing to apply it. Although "a newly declared constitutional rule" must be applied to criminal cases pending on direct review, Griffith v. Kentucky, 479 U.S. 314, 322 (1987), the Adjutant rule does not fit this description. The Adjutant court recognized that it created "a new common-law rule of evidence," which was addressed to errors that were "nonconstitutional." For this reason, the court held that the rule would be prospective only. 824 N.E.2d at 14-15. Moreover, the court noted that the new rule was one of discretion, requiring the judge to weigh the probative value against the prejudicial effect of allowing in the specific acts. Id.

Even so, the SJC reviewed the question under Mass. Gen. Laws ch. 278, § 33E. It found that "abundant evidence of the victims' specific acts of violence was admitted" at trial, even with the limitation imposed by the requirement then in place that the defendants have knowledge of those acts. Clemente, 893 N.E.2d at 32. Additional evidence about acts of first aggression was admitted, and the jury heard about a California murder trial against Roman Luisi. A review of the record indicates that there was a great deal of evidence on this subject. This situation is not akin to prohibiting the defendants from calling any witnesses. See Neverson, 242 F. Supp. at 86. Rather, the trial court admitted evidence of specific acts of violence, and the SJC concluded it was within his discretion to limit additional cumulative evidence on the subject. Clemente, 893 N.E.2d at 32. The petitioners' challenge to this conclusion does not warrant habeas relief.

At trial, witness Joseph Ferlito asserted his Fifth Amendment privilege and the trial judge found this to be valid. The court denied the petitioners' motion to admit Ferlito's grand jury testimony as prior recorded testimony because it found the opportunity and motive for questioning to be different. The petitioners now assert that this denial was a due process violation. The SJC concluded that "we decline to adopt a general rule that would allow the admission of prior recorded testimony from a grand jury proceeding of a now unavailable witness." Clemente, 893 N.E.2d at 37. Since this Court cannot "reexamine state-court determinations on state-law questions," this claim does not warrant habeas relief. Estelle, 502 U.S. at 68.

Having survived the shooting, Sarro was summonsed, refused to testify, and found in contempt of court. At a hearing, Sarro claimed the Fifth Amendment privilege. The petitioners argue that they were denied access to the transcript of this hearing in violation of their due process rights. However, the SJC found on review of the trial transcript that "the attorneys for the defendants were present at the hearing at which Sarro claimed the Fifth Amendment privilege." Clemente, 893 N.E.2d at 41. That finding is conclusive here. There is no ground for habeas relief as to this claim.

### ii. Jury Instructions

The petitioners claim due process violations based on the jury instructions given by the trial judge on reasonable provocation/voluntary manslaughter[10] and the intent element of joint venture.[11] Federal habeas courts do not grant relief simply on the basis or a deficient jury instruction. See Estelle, 502 U.S. at 73. A reviewing federal court can only determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

---

[10] Anthony's and Damian's grounds one.
[11] Damian's ground two.

process." Cupp v. Naughten, 414 U.S. 141, 147 (1973); see also Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) ("it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned," but that it violated a constitutional right). Instructions must be reviewed "in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72. Thus, the inquiry must be "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. Boyde v. California, 494 U.S. 370, 380 (1990).

The SJC found that Anthony was not prejudiced by an error in the jury instruction on reasonable provocation/voluntary manslaughter. Although the instruction given was incorrect, the SJC found that the evidence did not warrant a provocation instruction. "Because Anthony was not entitled to an instruction on provocation, he received more protection than the law afforded him; therefore, the error could not have prejudiced him." Clemente, 893 N.E.2d at 43. Thus there is no "reasonable likelihood" that the giving of the erroneous instruction violated the Constitution. See Boyde, 494 U.S. at 380.

The SJC found no error in the trial judge's instruction on the intent element of a joint venture. Instead, it noted that the judge's "instruction [was] the precise statement our cases require," because he repeated the three elements verbatim and "adequately set forth the Commonwealth's burden regarding intent." Clemente, 893 N.E.2d at 49-50. Thus the SJC's decision that the jury instruction was proper rested entirely on state law. Any claim of error in those instructions, of which the petitioners have shown no evidence, clearly does not rise to the level of a constitutional violation and therefore is not cognizable on habeas review. See Estelle, 502 U.S. at 67-68.

B.   Access to Evidence Claims

The petitioners claim violations of their Fifth, Sixth, and Fourteenth Amendment rights because they were denied access to a fanny pack worn by victim Roman Luisi at the shooting[12] as well as police and DEA reports of an interview with Alfred Sapochetti and Sapochetti's grand jury testimony.[13] A defendant has a due process right to receive evidence from the government that is material to his guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). There are three components to a Brady violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Brady does not, however, create a "general constitutional right to discovery." Weatherford v. Bursey, 429 U.S. 545, 559 (1977). The government bears primary responsibility for determining which evidence must be disclosed to a defendant pursuant to Brady. United States v. Prochilo, 629 F.3d 264, 268 (1st Cir. 2011). To establish a Brady violation, the defendant must provide "some indication" that the materials requested contain potentially exculpatory evidence. United States v. DeCologero, 530 F.3d 36, 64 (1st Cir. 2008).

A due process violation may be found where the government destroys evidence. Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988). However, the evidence must "both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." California v. Trombetta, 467 U.S. 479, 489 (1984). Although a due process violation occurs whenever material exculpatory evidence is withheld, Brady, 373 U.S. 83, "a different

---

[12] Anthony's ground four, Damian's ground five.
[13] Anthony's ground five, Damian's ground six.

result [ensues] when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," Youngblood, 488 U.S. at 57. Failure to preserve this "potentially useful evidence" only violates due process if the defendant can show bad faith. Id. at 58.

      *i.*      *The Fanny Pack*

The petitioners claim that the failure to preserve Roman Luisi's fanny pack violated their right to due process. The petitioners contend that the fanny pack may have contained a weapon that Anthony believes Roman reached for when he confronted him at the restaurant. The SJC found that:

> When the Boston police responded to the 99 Restaurant, no weapons were found on any of the victims, but a "leather pouch" or fanny pack was found under the body of Richard Sarro. The fanny pack contained a pocket knife, a small plastic razor, a cellular telephone, four sets of keys, a wallet, over $2,000 in cash, a battery, and two loose pills. No witness recalled who recovered the fanny pack. The police believed it to be of 'no evidentiary value' to the case and returned it at some point to Roman Luisi's wife.

Clemente, 893 N.E.2d at 34. The petitioners claim that because the fanny pack contained a knife and may have contained a gun, access to it would have reinforced their theory of self-defense. They argue that the fanny pack could have been tested for gunshot residue and would therefore have created reasonable doubt as to the identity of the first aggressor. They assert that the SJC incorrectly concluded that their due process rights were not violated and that it misapplied Supreme Court case law.

The SJC noted that "there was no testimony that Roman Luisi customarily carried a weapon in his fanny pack" and that "the claim remains speculative and ignores the testimony of all the police witnesses that no gun was found in the fanny pack." Id. at 34 & n.23. Still, it concluded that, at most, the fanny pack evidence was "potentially exculpatory." Evidence that

12

may have some potential use is not apparently exculpatory and does not trigger a Brady violation. See Trombetta, 467 U.S. at 489. The petitioners have failed to assert how the fanny pack was apparently exculpatory, since possible presence of gunshot residue from a gun that was not found on the scene does not make the fanny pack exculpatory on its face. See Illinois v. Fisher, 540 U.S. 544, 547-48 (2004). Furthermore, the petitioners have made no attempt to prove that the destruction of the fanny pack was done in bad faith. Youngblood, 488 U.S. at 58 ("unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law").

    ii.    *Sapochetti*

The petitioners claim their due process rights were violated when the Commonwealth withheld a state police report of an interview with Sapochetti, a DEA report of that interview, and Sapochetti's grand jury testimony in an unrelated case. Sapochetti allegedly sold drugs to Roman Luisi at the 99 Restaurant immediately prior to the shooting. During the trial, Sapochetti was cooperating with law enforcement on unrelated matters and reports prepared by state police and the DEA indicate that he referred to the Luisi family but did not mention the shooting. Months after the conclusion of the petitioners' trial, Sapochetti testified before a federal grand jury in an unrelated case. He described selling cocaine to Roman Luisi at the 99 Restaurant. The SJC found that the remainder of his testimony had no relevance to the petitioners' case.

The petitioners claim the SJC analyzed this withheld evidence in isolation rather than in the larger context of the trial and the petitioners' self-defense claims. They believe the testimony would have corroborated Anthony's assertions that the Luisis had access to firearms that someone moved Roman Luisi's body at the scene, and that Roman Luisi had a gun and fired the first shot at the restaurant. They assert that there is a reasonable probability that the jury would

13

have found Anthony acted in self-defense and defense of others and that the result of the proceedings would have been different.

The SJC found that the prosecutor had "no duty to discover before trial the identity of Sapochetti or the details of his drug dealing at the 99 Restaurant." Clemente, 893 N.E.2d at 36. The petitioners are asserting that the prosecutor was constitutionally responsible to turn over materials in an unrelated case. While prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," the state police and federal government were conducting an entirely separate investigation that had no relation or bearing on the state court trial of the petitioners. See Kyles v. Whitley, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy"). Here, the petitioners are asserting a non-existent constitutional right to discovery and are not entitled to habeas relief. See Weatherford, 429 U.S. at 559.

### C. Right to an Impartial Jury Claims

The petitioners claim that their due process right to an impartial jury was violated when the trial judge denied their motions for change of venue and to strike the venire[14] and failed to dismiss two deliberating jurors who came in contact with a newspaper article.[15]

The Sixth Amendment right to a jury trial guarantees a trial "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. However, under exceptional circumstances a change of venue may be appropriate "if extraordinary local prejudice will prevent a fair trial." Skilling v. United States, 561 U.S. 358, 378 (2010). A case's prominence alone "does not necessarily produce prejudice, and juror impartiality . . . does not require ignorance;" jurors "need not enter the box with empty heads in

---

[14] Anthony's ground seven, Damian's ground eight.
[15] Anthony's ground eight, Damian's ground nine.

order to determine the facts impartially." Id. at 381, 398 (internal citations omitted) (emphasis in original).

Before the SJC and this Court, the petitioners have argued for change of venue because some venirepersons may have been discussing the case among themselves. This is not a circumstance that a change of venue is meant to remedy. There is no claim of widespread bias that would infect the entire venire or locale. The SJC was correct in recognizing this point. Clemente, 893 N.E.2d at 44 ("A change of venue is not a remedy for an improperly influenced venire. A change of venue is granted when it is impossible to obtain a fair and impartial jury due to pervasive bias in the community.").

Instead, the trial judge took the appropriate remedial action of addressing the alleged conversations through individual voir dire. "The best way to ensure that jurors do not harbor biases for or against the parties is for the trial court to conduct a thorough voir dire examination." Correia v. Fitzgerald, 354 F.3d 47, 52 (1st Cir. 2003); see also Sampson v. United States, 724 F.3d 150, 163 (1st Cir. 2013) (voir dire "is a singularly important means of safeguarding the right to an impartial jury"). The trial judge excused four jurors who had had conversations about the case and "received declarations of impartiality from those jurors who were seated. [A] judge is entitled to accept such assurances of disinterest." Clemente, 893 N.E.2d at 45. The trial judge was diligent in conducting the voir dire, and the SJC was correct to affirm his determination. See Skilling, 561 U.S. at 386 ("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality"). The petitioners have put forward no evidence of prejudice that would change that determination.

The petitioners also claim their due process right to an impartial jury was violated because the trial judge refused to dismiss the two deliberating jurors who saw the newspaper article which was slipped under the deliberation room door. The SJC found:

> On the third day of deliberations, a newspaper article about the case was slipped under the door of the jury room, apparently while a court officer had left her post momentarily. A juror saw the paper come under the door and immediately picked it up and showed it to the foreman, who gave it to the court officer. When the judge learned of the incident, he called in the foreman and the juror who had first seen the paper and interviewed them separately; both stated that they did not read the article, and that while other jurors had seen the paper, no one else had read it. The judge then called in the entire jury and asked them whether the incident had in any way affected their ability to be fair and impartial. All responded in the negative, and the judge instructed the jury to resume deliberations. The next day, the defendants moved for a mistrial. The judge denied the motion. . . .
>
> [W]e have granted trial judges "wide discretion" in dealing with publicity that might have a prejudicial effect on jurors. The judge in this case followed the procedures set forth in *Commonwealth v. Jackson, supra.* Having established that two jurors might have come into contact with the material, he questioned those jurors individually, out of the presence of other jurors, to determine the extent of their exposure to the material and whether it affected their ability to render an impartial verdict. He also satisfied himself that the remaining jurors, whom he questioned en masse, had not been exposed to the extraneous material and that the fact of the incident itself had not affected them. See *id.* The judge was entitled to believe the jurors when they stated that their impartiality would not be affected.

Clemente, 893 N.E.2d at 45-46 (internal citations omitted). Substantial deference is due to a trial court's exercise of discretion in determining potential juror bias because it is in the best position to assess the attitudes of jurors. Skilling, 561 U.S. at 396. In Skilling v. United States, the defendant claimed several particular jurors were openly biased. The Supreme Court upheld the trial judge's determination of impartiality, recognizing that "[i]n reviewing claims of this type, the deference due to district courts is at its pinnacle: A trial court's findings of juror impartiality may be overturned only for manifest error." Id. (internal citations omitted). Here, the trial judge individually questioned the two jurors and assessed their credibility and the potential for any bias. He questioned the entire panel as well. His determination of the jury's impartiality is a factual finding entitled to a presumption of correctness, which the petitioners have not rebutted

by clear and convincing evidence. 28 U.S.C § 2254(e)(1). It was not error to decline to dismiss the jurors.

### D. Ineffective Assistance of Counsel

Anthony claims that his trial counsel was ineffective when he waived his motion to suppress statements made to Detective Keeler and chose not to seek suppression of the identification procedure used by police.[16] To establish ineffective assistance of counsel, the petitioner must demonstrate both that "counsel's representation fell below an objective standard of reasonableness," and "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88 (1984). A lawyer's representation falls below an objective standard of reasonableness when "counsel's choice was so patently unreasonable that no competent attorney would have made it." Tevlin v. Spencer, 621 F.3d 59, 66 (1st Cir. 2010) (internal citation and quotation omitted). Prejudice exists when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 66 (internal citations and quotations omitted). There is "'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and represents sound trial strategy." Jewett v. Brady, 634 F.3d 67, 75 (1st Cir. 2011) (quoting Strickland, 466 U.S. at 689).

Strategic decisions made by counsel after thorough investigation are "virtually unchallengeable." Strickland, 466 U.S. at 690. Strategic decisions include those made in an effort to avoid presenting further evidence implicating the defendant. Estevez v. United States, 601 F. Supp. 2d 348, 353 (D. Mass. 2009). If counsel chooses to focus on certain issues while excluding others, "there is a strong presumption that he did so for tactical reasons rather than through sheer

---

[16] Anthony's ground thirteen.

neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003). Where the petitioner claims ineffective assistance for failure to file a motion to suppress, the inquiry involves two assessments. First, the petitioner must show that the constitutional claim has merit and second, that "there was a reasonable possibility that the verdict would have been different without the excludable evidence." Barry v. Ficco, 392 F. Supp. 2d 83, 94 (D. Mass. 2005) (quoting Commonwealth v. Anderson, 787 N.E.2d 1136, 1144 (Mass. App. Ct. 2003)). On a habeas petition, the task before this Court is not to apply the Strickland test in the first instance but instead to determine whether the SJC's application of the test was "unreasonable." Harrington v. Richter, 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the Strickland standard was unreasonable.").

The SJC found that trial counsel's waiver of the motion to suppress his confession was a reasonable tactical decision, given the interest of presenting a coherent defense and the motion's minimal chance of success. Likewise, the SJC found no ineffective assistance for the failure to challenge the identification, since Anthony did not dispute that he was at the restaurant and fired the shots. Given the facts found by the SJC, the decisions to waive the motion to suppress and not to challenge the identification procedures were objectively reasonable under Strickland. Since Anthony's statements further supported his theory of self-defense, the decision not to challenge their admission was clearly a tactical decision. See Rosenthal v. O'Brien, 814 F. Supp. 2d 39, 56 (D. Mass. 2011). These decisions are strategic in nature and therefore "virtually unchallengeable." Strickland, 466 U.S. at 690. The SJC's analysis to this effect was reasonable.

### E. Combined Errors

Finally, Anthony claims the effect of these combined errors violated his right to due process.[17] Even where individual errors may not warrant habeas relief, a combination of errors may "disfigure the proceedings so significantly as to undermine our confidence that the defendant received a fair trial." United States v. Gonzalez-Melendez, 594 F.3d 28, 37 (1st Cir. 2010). A court must assess a number of variables, including the nature and number of errors, the interrelationship between these errors, and how the trial court dealt with the errors as they arose. Id. It is also necessary to examine the length of the trial and the strength of the government's case against the defendants. Id.

Here, the SJC carefully reviewed the trial record and addressed the trial court's alleged errors under the relevant substantive law as well as the Massachusetts substantial likelihood of miscarriage of justice standard. See Mass. Gen. Laws ch. 278 § 33E. The SJC dismissed each of Anthony's claims of error, and this opinion has found each of those dismissals, to the extent they are cognizable on habeas review, to be a reasonable application of Supreme Court case law. Accordingly, the SJC's dismissal of the cumulative errors claim was also reasonable.

## V. Conclusion

For the reasons set forth herein, Anthony Clemente's petition (No. 10-cv-10279-GAO, dkt. no. 1) and Damian Clemente's petition (No. 10-cv-10282-GAO, dkt. no. 1) for habeas relief pursuant to 28 U.S.C. § 2254 are DENIED.

---

[17] Anthony's ground seventeen. This is the last of the petitioners' grounds. Anthony's sixteenth ground, regarding prior recorded testimony, was voluntarily dismissed. (See March 10, 2011 Order Granting Mot. to Dismiss (dkt. no. 21); Dec. 16, 2010 Order Adopting in Part Report and Recommendations (dkt. no. 16).)

A certificate of appealability with respect to Anthony and Damian Clemente's petitions under 28 U.S.C. § 2254 is DENIED because the petitioners did not make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

It is SO ORDERED.

/s/ George A. O'Toole, Jr.<br>United States District Judge